## CRAWFORD et al. v. CREEL et al.
### No. 2379.

Court of Civil Appeals of Texas. Beaumont.
July 6, 1933.

Rehearing Denied July 19, 1933.

Gordon, Lawhon, Davidson & Sharfstein, of Beaumont, Crawford & Crawford, of Conroe, and Sewell, Taylor, Morris & Garwood, of Houston, for appellants.

W. D. Gordon and Thomas J. Baten, both of Beaumont, for appellees.

O'QUINN, Justice.

Appellees Elberry Creel, joined by her husband, B. W. Creel, Frank Walters and Edgar Walters, brought this suit against T. W. Crawford to cancel and annul a certain deed executed by them conveying an undivided one-half interest in and to 104 acres of land, a part of the Wilson Strickland survey, situated in Montgomery county, Tex. The grounds alleged for avoiding the deed were fraud in procuring its execution and gross in-adequacy in consideration. By amendment Thomas L. Cummings was made a party defendant.

Defendant T. W. Crawford answered by general demurrer and general denial. Defendant Cummings answered by general demurrer, general denial, and plea of not guilty.

The case was tried to a jury upon special issues, upon the answers to which judgment was rendered in favor of appellees annulling and canceling the deed in question. Motion for a new trial was overruled, and appellants Crawford and Cummings bring this appeal.

Appellees, plaintiffs below, alleged that on September 24, 1930, Vincent Walters, an uncle of theirs, died intestate in Montgomery county, Tex.; that, among other things, he owned in fee-simple title 104 acres of land situated in Montgomery county, Tex., which land was a part of the W. Strickland survey, describing same by metes and bounds; that said Vincent Walters was not indebted to any person, and that there was no mortgage or incumbrance against his estate, except a chattel mortgage in the sum of $50.75; that upon his death one-half of his estate passed to and became vested in appellees, they being the children and lawful heirs of Tobe (or Noah) Walters, a deceased brother of said Vincent Walters; and that the other one-half of the estate of said Vincent Walters passed to and vested in the seven children and heirs of Ben Walters, another deceased brother of Vincent Walters.

As above stated, appellees sought to annul and cancel the deed to appellant T. W. Crawford on the grounds of fraud in the procurement of the execution of said deed and gross inadequacy for its execution. They alleged:

"That within a few days after the death of the said Vincent Walters, whose demise was entirely unknown to these plaintiffs, one S. A. Crawford, a man skilled in the laws of this state, being a practitioner of the law in the courts of this state and residing in Conroe, Montgomery County, Texas, acting for and on behalf of, at the instance of and in collaboration with his son T. W. Crawford, who is also a practitioner of the law and skilled in such matters, being a resident citizen of Conroe, Texas, conceiving the fraudulent purpose and design of acquiring the estate of these plaintiffs aforesaid, and knowing that they were all ignorant and unlettered, unfamiliar with the facts as to their uncle's death and as to the condition of his estate and the value thereof, came over into Hardin County, Texas, where the plaintiffs Elberry Creel and her husband were living, with the design and purposes aforesaid, sought them out at their home, about twelve miles north of the town of Kountze, near

Long Station and introduced. himself as a lawyer acquainted with their rights and duties incident to the decease of their uncle, and stated to them substantially as follows:

"That they had a small interest in common with nine other persons as collateral descendants of said Vincent Walters, and that said Vincent Walters' estate was burdened with an indebtedness of approximately $400.-00, consisting, among other things, of a note at the Bank of approximately $51.00, doctors' bills and funeral expenses; all of which the plaintiffs and their co-heirs, interested in said estate, would have to pay, and that such sums of money exceeded in value the estate owned by their deceased uncle at his death, and that his son, T. W. Crawford, was proposing to relieve them of their obligations by paying the debts and taking said land, which, he stated, was not worth over Fifty cents per acre.

"III. The plaintiffs were all ignorant and unlearned in such matters, and were without information as to the facts, except such as the said Crawford imparted to them. These representations they believed, and acting upon this belief were induced to execute a deed to the said T. W. Crawford in. words and figures, or in substance, as follows:

"Deed from Elberry Creel and her husband B. W. Creel of Hardin County, Texas, Frank Walters and Edgar Walters of Polk County, Texas, to T. W. Crawford of Montgomery County, Texas, conveying an undivided one-half interest in the 104 acres of the Wilson Strickland survey in Montgomery County, Texas, fully described by metes and bounds as hereinabove described, which deed was purported to be acknowledged by Elberry Creel, and her husband, before C. S. Damrel, Notary Public of Hardin County, Texas, and by Frank and Edgar Walters before W. J. Tyllos, Notary Public for Polk County, Texas, and filed for record on October 1, 1930, and recorded in Vol. 128, page 309 of Deed Records of Montgomery County, Texas.

"The foregoing deed after having been signed by the plaintiffs and delivered to the defendant, was thereupon recorded in the deed records of Montgomery County, as set out in the preceding paragraph, to which deed reference is here made for all relevant. purposes.

"IV. Having thus convinced the plaintiffs that they were helpless and powerless by reason of their impoverished condition, they having no money with which to pay the said represented claims against said estate, and believing the representations aforesaid as to said obligations of their deceased uncle and the insignificant value of said property, these plaintiffs in reliance thereon and in ignorance of the true facts, executed said deed and

received at the hands of said S. A. Crawford and his son, the defendant herein, as aforesaid, the sum of $15.00 each, being less than one dollar per acre for their interest in said land; none of which things plaintiffs would have done if they had not been thus misled and deceived and over-reached and thereby defrauded of their legal and equitable rights.

"As a matter of fact, known to the defendant and his father, but unknown to these plaintiffs, said land had many times the value so represented to them and so paid to 'them by defendant, as aforesaid, to-wit, it had a value in excess of $10.00 per acre value for farming purposes alone, it being the homestead of the said Vincent Walters, improved as a residence and a farm, on which he had lived for approximately forty years. All of which facts, as aforesaid, were misrepresented by the defendant and his said representative in said transaction for the fraudulent intent and purpose of procuring plaintiffs' rights and title in said property at a vile price.

"Moreover, at that time said property was valuable for prospective oil and mineral purposes, mineralogists and geologists having designated that section and area of the County as having evidence of being underlaid with oils and minerals and said land then having oil and mineral lease values far in excess of the amount paid to these plaintiffs as aforesaid.

"These facts were well known to the defendant and his agent and representative aforesaid, and were unknown to these plaintiffs.

"As matter of fact many tracts of land in that immediate vicinity were then being leased, and under lease, for oil and mineral purposes for considerations in excess of such payments as were thus made to these plaintiffs. And shortly thereafter drilling operations were conducted upon the land in that vicinity, resulting in the discovery and production of valuable oil and gas minerals.

"The defendant and his representative aforesaid were at all times fully cognizant, were fully aware that these plaintiffs knew nothing about such facts, and took an unscionable advantage of these plaintiffs in concealing and suppressing these facts in order that they might, through the method and means aforesaid, secure their property and estate at an unconscionable and unreasonable price, and by unconscionable and fraudulent methods as aforesaid.

"As matter of fact, the said Vincent Walters at the time of his death was not indebted in anywise to anyone and was in possession of cash and personal property sufficient in amount to pay any just and reasonable claims assertable against his estate growing out of his demise and burial, which facts were also

well known to the defendant and to his representatives aforesaid, and of which facts these plaintiffs were in utter ignorance, as the defendant well knew.

"V. In pursuance of the unconscionable enterprise thus embarked upon by the defendant as aforesaid to secure the title and estate of these plaintiffs a few days after their uncle had died, and of which they were in entire ignorance until apprised thereof as aforesaid by defendant and his representative, the said S. A. Crawford, first secured; by the means and methods above outlined, the signature of the plaintiff Elberry Creel and her husband, B. W. Creel at their residence as aforesaid, and induced them to sign by their marks, they being unable to read and write, the deed aforesaid, which had already been prepared by the said Crawfords for their signatures.

"Thereupon, the said Crawford took them before C. S. Damerel, a Notary Public, living at Village Mills, who placed his signature and seal to the certificate of acknowledgment appearing on said date. That as matter of fact he did not comply with the Texas statute affecting married women by examining the said Elberry Creel (whose separate property this was), separately and apart from her husband, nor did he explain said instrument to her, as required by law, nor did she, upon such separate examination and as to such separate explanation, acknowledge the same as her act and deed and declare that she did not wish to retract it.

"As matter of fact, in the presence of her husband, in the Kirby Lumber Company store where the Notary Public was employed, and in the presence of the said S. A. Crawford, the said Notary Public simply asked the plaintiff Elberry Creel, if she was willing to sign such deed, and she answered that she was, and thus he affixed his signature and seal to the certificate already written out and prepared by the said Crawford. None of these things she would have done in any event had she been aware of the true facts as hereinbefore alleged.

"VI. Having thus within less than one hour's time from his first approach to the plaintiff Elberry Creel, secured in that manner the signature of herself and her husband by their marks to said instrument, and paying her the sum of $15.00 therefor, he thereupon left for Polk County, and by similar means and methods, and like representations as hereinbefore alleged, secured the signatures of the other plaintiffs herein, to-wit, Frank and Edgar Walters; and being so agitated in the conduct of said negotiation and unconscionable transaction that he wrote their signatures as Frank 'Creel' and Edgar 'Creel' instead of Frank Walters and Edgar Walters (they being unable to read or write

their names), although their correct names were given in the body of the deed and in the certificate of acknowledgment, all of which were written by him prior to the presentation to them for signature.

"VII. The plaintiffs here tender into court the monies paid to them, to-wit, the sum of $15.00 for each plaintiff, and offer to pay as a condition precedent to the relief herein sought, such other and additional sums, if any, as in equity and good conscience they ought to tender and pay, pre-requisite to the granting of relief against the defendant, as asked in the subjoined prayer to this petition.

"Moreover, they here offer to do and perform any and all other things which in equity and good conscience they ought to do in aid of relief sought by them.

"Wherefore, because of the fraud practiced upon the plaintiffs in manner and form as above alleged, this Honorable Court has jurisdiction of this cause.

"And they here pray that the defendant be cited to answer this petition, and upon final trial that they have judgment cancelling and annulling the deed thus procured from them by the defendant, and that the defendant, and all others in privity with or claiming through and under him, be perpetually enjoined from asserting any claim of title or right of possession, or ownership as against these plaintiffs to the property described and referred to in said deed.

"And they further pray for such other and general relief as in justice and equity they may be entitled to receive, together with all costs of this suit."

By trial amendment appellees further alleged:

"Leave of the court being had, come now the plaintiffs in this cause and file the following trial amendment to their pleadings on file in this cause, and for such trial amendment they say:

"That the defendant T. W. Crawford, through his agent and representative, S. A. Crawford, assumed no obligation or duty toward them by any contract or agreement valid and enforceable at law as to the indebtedness owed by their deceased uncle's estate, but, on the contrary, induced the plaintiffs to execute a deed of general warranty against any and all claims, for the consideration in cash recited in plaintiffs' pleadings, and thereby the plaintiffs became, under the terms and conditions of the contract which they were induced to enter into, bound and obligated to the defendants, contrary to the promises made to induce the execution of such deed, on their covenants of general warranty as against the claims against their uncle's estate and all other claims; none of which facts, because of their utter ignorance

of legal matters, were known to the plaintiffs, but were well known to the defendant T. W. Crawford and his agent aforesaid.

"Moreover, further supplementing and amending by this trial amendment their pleadings, these plaintiffs say they were so unskilled and unfamiliar with the legal effect of the transaction which they entered into in the form outlined in said pleadings and in said deed that they were not acting as normal and responsible persons, capable of understanding and protecting their legal rights against the efforts of the said S. A. Crawford to procure from them a deed or conveyance of their rights; all of which they would not have done but for this condition and state of facts, and all of which defendants well knew at the time.

"And plaintiffs further allege that said consideration paid to them in connection with the circumstances under which said transaction was made and said deed signed was wholly inadequate, and insufficient to support and sustain such contract.

"Wherefore, they pray as they have already prayed in their original petition on file in this cause."

To this trial amendment, appellants answered by general demurrer, several special exceptions, a general denial, and defendant T. W. Crawford specially answered: "By way of further answer herein, the defendant T. W. Crawford says that at the time he acquired a deed from these plaintiffs, it was understood and explained to them that the indebtedness against this land of 104 acres, of which they owned a part, that all indebtedness would be assumed and paid off, and that they would not be liable for any amount of said indebtedness whatever; and in this connection the defendant T. W. Crawford says that all of the indebtedness has been paid, and there is not anything due to any one by said estate, but said indebtedness has all been discharged; and proper receipts and vouchers have been obtained from those who hold claims against said estate, and that the warranty in said deed as against said claims amounts to naught, in that all claims having been paid, the warrantors could not be called upon to pay the same again."

In answer to special issues, the jury found: (a) That the consideration for which appellees executed the deed was grossly inadequate; (b) that S. A. Crawford did not state the true facts as to the value of the estate of Vincent Walters, deceased, to Mrs. Creel at the time she executed the deed conveying her interest in the land in question; (c) that Mrs. Creel relied upon the statements made to her by said Crawford, and that her reliance upon said statements caused her to execute the deed; (d) that S. A. Crawford obtained from Mrs. Creel her interest in the land by withholding from her the true facts concerning her interest and her rights in said land; (e) that Mrs. Creel was in part induced to execute the deed by the representations made to her by said S. A. Crawford that, if she did not sign the deed, she would not receive anything, because the land would be sold in court and her interest would be taken for debts which the estate owed; (f) that said Crawford misrepresented the facts to Mrs. Creel as to the amount of indebtedness owing by the Vincent Walters estate, and that Mrs. Creel was induced to execute the deed by such misrepresentations; (g) that S. A. Crawford stated in effect to Frank Walters that, if he did not sign the deed, he would receive nothing from the estate of his uncle Vincent Walters, deceased, but that the debts owing by the estate would take the estate by law; that said statement was not true in fact, and that Frank Walters was, in part, induced by said statements to execute the deed; (h) that Edgar Walters was induced to sign the deed by the fact that his sister, Mrs. Elberry Creel, and his brother, Frank Walters, had already signed same.

Appellants' first four propositions complain that the court erred in refusing their request for an instructed verdict. These propositions are overruled. The issues raised by the allegations in the petition of appellees were issues of fact, and the evidence supported same, hence the court properly refused the motion.

The fifth proposition asserts that the alleged statements of S. A. Crawford to appellees relative to the value of the land conveyed and the amount of indebtedness against the estate of Vincent Walters were merely expressions of opinion, and could not be made the basis of actionable fraud, and would not support a finding of fraud. The proposition is overruled. The alleged statements were statements of fact, not merely conclusions.

The sixth and seventh propositions assert that the undisputed evidence shows that appellee Frank Walters voluntarily executed the deed sought to be canceled, and that, if he acted on any statement or representations of S. A. Crawford, said statements were merely the opinion of said Crawford, and would not support an action for fraud. We have already held that the statements of S. A. Crawford to appellees to induce them to execute the deed were statements of fact, and not merely expressions of his opinion as to the matters stated. As to Frank Walters acting voluntarily in the execution of the deed from his own knowledge of the value of the land, Vincent Walters, uncle of Frank Walters, died in Montgomery county, Tex., on September 24, 1930, intestate. The deed from appellees to T. W. Crawford is dated

September 30, 1930, six days after Vincent Walters died. The deed was prepared by S. A. Crawford, father of, and partner in the practice of law with, T. W. Crawford, and presented to the appellee Frank Walters in Polk county for execution before Frank Walters had heard of his uncle's death. He was surprised at the news of his uncle's death. The deed bore the signatures of his sister, Mrs. Elberry Creel, and her husband, B. W. Creel; S. A. Crawford having secured their execution of the deed in Hardin county before presenting same to Frank Walters. While Frank Walters stated that he was well acquainted with the 104 acres of land, and that he had heard talk that there were oil possibilities connected with the land, and that independently of any oil possibilities the land for farming purposes was worth more than 50 cents an acre, the value of same stated by S. A. Crawford, still he (Frank Walters) unquestionably did not know of the present existence of an oil leasing boom in the vicinity of the land, nor did he have any knowledge that land in the same survey and adjoining and near surveys had very shortly before the date of the execution of the deed been leased for good cash bonuses ($2 to $4 per acre) and for a considerable consideration in cash and reserved royalties, but S. A. Crawford did have such knowledge, and failed to inform him of such facts. Also we think the record indisputedly shows that the statement that the estate of Vincent Walters was involved in debt to the amount of some $400, and that the land would be sold for the debts unless they were paid, and the fact that none of appellees were financially able to discharge said debts caused, of itself, appellees to think that, unless they accepted the offer of T. W. Crawford, made through his father, S. A. Crawford, the interest of appellees would be entirely lost, and, because of their ignorance of the potential oil value of the land, and the lack of funds with which to discharge the supposed debts against the estate, and believing that only by accepting the offer of T. W. Crawford made by S. A. Crawford could anything be realized out of their interest in the estate, Frank Walters and the other appellees executed the deed. It is obvious from the record that Frank Walters was not acting voluntarily, independent of statements made to him by S. A. Crawford, when he executed the deed. We will add that appellees were very ignorant, none of them being able to read or write. The propositions are overruled.

What we have said disposes of the contention that Edgar Walters acted voluntarily in his execution of the deed and was not caused to execute the deed by the statements made to him by S. A. Crawford.

■ The tenth proposition says that there was no proof that appellee Edgar Walters was induced to sign the deed because his sister, Mrs. Elberry Creel, and his brother, Frank Walters, had signed same, and that the special issue inquiring as to this should not have been submitted. This proposition is overruled. Mr. S. A. Crawford, when on the witness stand, testified: "I says, 'Edgar, your sister has made a deed to Mr. Vincent Walters' estate. Frank has done the same thing. If you want to sign I am going to pay you $15.00, and if you don't want to sign it that is all right.'"

Edgar saw the deed which had been signed by his sister, Mrs. Creel, and by her husband, and also by his brother Frank. It showed that his sister and his brother had each received $15 for their interest. He knew less of the value of the land than did his brother Frank. He, too, was without money with which to pay the debts stated to be against the estate. He knew that neither his sister nor his brother had money with which to discharge the debts, and, like the others, believing he would get nothing unless he accepted appellants' offer of $15, he signed the deed. This proposition is overruled.

■ It is contended that the court erred in permitting defendant Cummings to be made a party defendant by a supplemental petition. There is no merit in this contention. It is true the instrument by which Cummings was made defendant was styled a supplemental petition, but, when considered in its terms and the purpose for which it was filed, it was an amendment to the original petition. The legal effect of a pleading is not determined by its style or the name given it by the pleader, but by its contents and the evident purpose for which it is offered. There was no error in overruling the demurrers directed against it, or in permitting proof under its allegations.

The fourteenth proposition complaining that the court's instruction to the jury upon the burden of proof was error is overruled. The charge placed the entire burden of proof upon plaintiffs (appellees here), and the only exception or objection made to the charge relative to the burden of proof was: "Defendants except and object to the charge of the court on the burden of proof in that same is incorrect and improper, and is erroneous in that by such instructions the jury is in effect told what the result of the answers to the various issues submitted to them will be."

It is seen that no inaccuracy of the charge, as a matter of law, is pointed out (Isbell v. Lennox, 116 Tex. 522–525, 295 S. W. 920), but the only specific matter complained against the charge is that it "in effect" tells the jury what the effect of their answers to the issues will be. The charge is not subject to this criticism.

Appellants do not challenge the finding of

the jury that the consideration for which appellees executed the deed to their interest (one-half of the 104 acres) in the land was grossly inadequate. So it is not necessary for us to point to the evidence as to the value of the land, but we will say that the evidence shows its value to have been many times more than what they received, and its potential value by way of oil prospects to have, by way of lease opportunities alone, very greatly exceeded the amount represented to appellees as its value, and what was paid to them.

Finally, as we view appellants' assignments, they nowhere challenge the findings of the jury as not supported by the facts. The insistence is that the statements and representations of S. A. Crawford, father of appellant T. W. Crawford, and who was acting in behalf of said T. W. Crawford in procuring appellees to execute the deed conveying their interest in the land to T. W. Crawford, were but merely the expression of his opinion as to the matters by him stated to appellees, and being such would not and could not be made the basis for actionable fraud. We think there is no doubt but that the statements of said S. A. Crawford to appellees, and to each of them, were statements of fact and were the inducing cause for the execution of the deed. These matters were properly submitted to the jury in special issues and by the jury answered against appellants, and the record amply sustains such findings. The statement of facts covers 235 typewritten pages. We shall not undertake to include herein such of the evidence as we think directly supports the answers of the jury, but say that a careful consideration of the whole record fully supports the findings.

From what we have said, it follows that the judgment should be affirmed, and it is so ordered.

Affirmed.